Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2737 | **DATE** | 5/29/2001 |
| **CASE TITLE** | TIG INSURANCE COMPANY vs. GIFFIN, WINNING, COHEN & BODEWES | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendants' motion to dismiss is granted as to the malpractice claim asserted against them in Count II, which is dismissed with prejudice, but is in all other respects denied. Status hearing set for 6/13/01 at 9:30a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAY 3 1 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 30 |
| | Mail AO 450 form. | ED-7 FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 01 MAY 30 PM 1:43 | date mailed notice | |
| TBK | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TIG INSURANCE COMPANY, individually and as subrogee of Illinois State University, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| GIFFIN, WINNING, COHEN & BODEWES, P.C., an Illinois professional corporation, and CAROL HANSEN POSEGATE, GREGORY K. HARRIS, and ARTHUR B. CORNELL, JR., individually, | )  No. 00 C 2737<br>)  Paul E. Plunkett, Senior Judge<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**DOCKETED MAY 31 2001**

## MEMORANDUM OPINION AND ORDER

TIG Insurance Company has filed a three-count amended complaint against defendants[1] seeking to recover money it paid to its insured, Illinois State University ("ISU"), for attorney's fees and costs that ISU incurred in connection with a class-action gender discrimination suit pending in the United States District Court for the Central District of Illinois. Defendants have filed a Federal Rule of Civil Procedure ("Rule")12(b)(6) motion to dismiss all of the claims asserted against them. For the reasons set forth below, the motion is granted in part and denied in part.

---

[1] Chicago Insurance Company was dismissed from this case earlier this year. (See 1/31/01 Mem. Op. & Order.) Thus, Giffin, Winning, Cohen & Bodewes, Carol Hansen Posegate, Gregory K. Harris and Arthur B. Cornell, Jr. are now the only defendants in the case.

30

## The Legal Standard

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. Midwest Grinding Co. v. Spitz, 976 F.2d 1016, 1019 (7th Cir. 1992). No claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

## Facts

ISU is insured under an excess liability insurance policy by TIG. (Am. Compl., Ex. A.[2]) The policy obligates TIG to pay "on behalf of the insureds 'ultimate net loss' in excess of the 'self-insured retention' which the insureds shall be legally obligated to pay for any civil claim or claims first made against them because of a 'wrongful act.'" (Id., Section I, ¶ 1a.) The policy defines "ultimate net loss" as "the amount which the insureds are legally obligated to pay . . . for any claim or claims made against them because of a 'wrongful act' and shall include . . . 'claim expenses.'" (Id., Section V, ¶ 8.) The policy defines "wrongful act" as "any actual or alleged error or misstatement or misleading statement or act or omission or neglect or breach of duty including, misfeasance, malfeasance and nonfeasance by any insured." (Id. ¶ 9.) The policy definition of "claim expenses" includes "[a]ttorney fees and all other litigation expenses." (Id. ¶ 2a.)

ISU is a defendant in a class-action gender discrimination suit, Varner v. Illinois State Univ., No. 95 C 1355, that is currently pending in the United States District Court for the Central District of Illinois. (Am. Compl. ¶¶ 4, 7.) ISU is represented in that suit by its "longtime counsel," the

---

[2]The policy actually identifies the insured as "Board of Regents of the Regency University System." (Am. Compl., Ex. A, Declarations.) Like the parties, however, we will assume that ISU is covered by the policy.

defendants. (Id. ¶¶ 10, 12.) During the course of the Varner litigation, the judge presiding over the case granted the plaintiffs' motion for sanctions against the defendants for their abuse of the discovery process. (Id. ¶¶ 8-24.) The Court imposed the sanctions solely against the defendants, not against ISU. (See Mem. Supp. Att'y Defs.' Mot. Dismiss, Ex. A at 47.[3]) TIG has incurred fees and costs in excess of $700,000 "[a]s a result of defending against the motion for sanctions and the litigation arising therefrom," and seeks to recover those costs from defendants. (Am. Compl. ¶ 30.)

## Discussion

Defendants first argue that all of TIG's claims, which seek damages in the form of attorneys fees and costs TIG expended for ISU's defense against the Varner sanctions motion, are barred by the "American rule." That principle, which prevents a party who prevails in a lawsuit from recovering his attorneys' fees and expenses from the losing party absent statutory authority for doing so, has long been the law in Illinois. See, e.g., Ritter v. Ritter, 381 Ill. 549, 552, 46 N.E.2d 41, 43 (1943) ("The allowance and recovery of costs rests entirely upon statutory provisions and no liability for costs exists in the absence of statutory authorization."). In Garris v. Schwartz, 551 F.2d 156 (7th Cir. 1977), our court of appeals predicted that the Illinois courts would also apply this principle to bar plaintiffs from recovering as damages the fees and expenses they incurred in litigation with a third party that was caused by the defendant. Id. at 159.

As it turns out, the Illinois Appellate Court disagreed. Three years after Garris was decided, in Sorenson v. Fio Rito, 90 Ill. App. 3d 368, 413 N.E.2d 47 (1st Dist. 1980) that court said:

---

[3]The defendants attached the docket sheet from the Varner litigation to their Memorandum of Law in Support of their Motion to Dismiss the Complaint and have incorporated it by reference in their Memorandum of Law in Support of their Motion to Dismiss the Amended Complaint. (See Att'y Defs.' Mem. Law Supp. Mot. Dismiss Am. Compl. at n.1.) As we noted in our Memorandum Opinion and Order on TIG's initial motion, we may take judicial notice of the proceedings in Varner because they are directly related to the issues in this suit. Green v. Warden, 699 F.2d 364, 369 (7th Cir. 1983).

> [T]he policy against awarding attorneys' fees was intended to apply only where a successful litigant seeks to recover his costs in maintaining the lawsuit. We do not believe it was intended to preclude a plaintiff from recovering losses directly caused by the defendant's conduct simply because those losses happen to take the form of attorney's fees.

Id., 90 Ill. App. 3d at 372, 413 N.E.2d at 51-52. The Sorenson court acknowledged the Garris decision, but expressly rejected its reasoning: "[W]e do not agree with the interpretation of Illinois law set forth in Garris . . . . In our view, Illinois law does not preclude us from awarding attorneys' fees when those fees constitute nothing more than ordinary losses resulting from the defendant's conduct." Id., 90 Ill. App. 3d at 374, 413 N.E.2d at 53; see Duignan v. Lincoln Towers Ins. Agency, 282 Ill. App. 3d 262, 268-69, 667 N.E.2d 608, 613 (1st Dist. 1996) (citing Sorenson and upholding damage award that included attorneys' fees plaintiff incurred in litigation caused by defendant's conduct).

After Sorenson, the Seventh Circuit decided Champion Parts, Inc., v. Oppenheimer & Co., 878 F.2d 1003 (7th Cir. 1989). The Champion court said that Illinois adheres to the American rule, except "[when] the wrongful acts of a defendant involve the plaintiff in litigation with third parties." Id. at 1006 (quoting Ritter, 381 Ill. at 554, 46 N.E.2d at 44) (internal quotation marks omitted). In such cases, "the plaintiff can . . . recover damages against [the] wrongdoer, measured by the reasonable expenses of [the] litigation, including attorney fees." Id. "The theory behind the exception," the court stated, "is that a tortfeasor should be held responsible for all of the natural and proximate consequences of his actions." Id. (citing Sorenson, 90 Ill. App. 3d at 372, 413 N.E.2d at 52). If a tortfeasor spawns litigation between the plaintiff and a third party, the court concluded, then he should be held liable for the fees and expenses the plaintiff incurs in that proceeding. Id.

The Champion decision does not mention, let alone overrule, Garris. But the court's discussion of the American rule, and its reliance on Sorenson – which explicitly repudiates the reasoning of Garris – clearly signals a retreat from that case. In the wake of Champion and Sorenson, we do not believe that Garris controls the outcome of this motion. Rather, like the Champion and Sorenson courts, we will adopt the American rule exception discussed by the Illinois Supreme Court in Ritter, that court's last and only statement on the subject, which holds tortfeasors responsible for all of the damages they cause, including fees and expenses of litigation they provoke between the plaintiff and a third party. Thus, TIG's claims are not barred by the American rule and defendants' motion to dismiss on that basis is denied.

Defendants also move to dismiss the legal malpractice claim TIG asserts against them in Count II. To state such a claim, TIG must allege, among other things, that it has an attorney-client relationship with the defendants. Belden v. Emmerman, 203 Ill. App. 3d 265, 268, 560 N.E.2d 1180, 1181 (1st Dist. 1990). To establish the existence of such a relationship, TIG must allege that it retained the defendants and has the power to control their activities. Nandorf v. CNA Ins. Cos., 134 Ill. App. 3d 134, 136-37 479 N.E.2d 988, 991 (1st Dist. 1985); National Union Ins. Co. v. Dowd & Dowd, 2 F. Supp. 2d 1013, 1018 (N.D. Ill. 1998).

TIG has not made the requisite allegations. Not only does TIG not allege that it retained the defendants, it admits that it did not. (Pl.'s Opp'n Defs.' Mot. Dismiss Am. Compl. at 6.) Moreover, there is no indication that TIG directs or controls defendants' activities in the Varner litigation.[4] Though TIG says that defendants keep it apprised of the status of that case, a requirement imposed on

---

[4]TIG contends that the policy provision that prohibits ISU from settling a case without TIG's consent demonstrates its control over defendants. (See Pl.'s Opp'n Defs.' Mot. Dismiss. Am. Compl. at 7.) In fact, it does the opposite. If TIG controlled ISU's lawyers, it would be impossible for ISU to settle a case without TIG's consent, which would render this provision superfluous.

-5-

ISU by the TIG policy (see Am. Compl., Ex. A, Section IV ¶¶ 3c(2)(b)-(c), 3c(3)(a), (e)), and allow it to see court papers before they are filed, it does not allege that defendants take TIG's direction on the conduct of ISU's defense.

Despite TIG's attempts to distinguish it, the situation in this case is virtually identical to that in National Union. National Union, like TIG, was an excess insurer whose obligation to indemnify the insured for its losses arose only after the insured had exhausted its self-insured retention. Id. at 1015. Further, National Union, like TIG, had no duty to defend the insured, so the insured, like ISU, retained its own counsel for the underlying litigation. Id. Finally, National Union, like TIG, attempted to sue the insured's lawyers directly for malpractice when the results of the underlying implicated the excess policy. Id.

Judge Norgle dismissed National Union's malpractice claim on the grounds that it had no attorney-client relationship with the insured's lawyers. Id. at 1018. According to the court, Illinois views the primary insurer as a part of the relationship between the insured and his attorney because of its "legal duty to retain and pay for an attorney to defend an action against [the] insured." Id. Unlike the primary insurer, the court noted, the excess insurer, which does not have a duty to defend, "typically has no right to select counsel or to direct counsel's actions." Id. (internal quotation marks and citation omitted). Such was the case with National Union. Because National Union had no direct relationship with its insured's lawyers, the court concluded, it could not sue them for malpractice. Id.

The National Union analysis is equally applicable here. TIG, an excess insurer with no duty to defend, did not retain the defendants and does not direct their activities. Because TIG has no direct relationship with defendants, it cannot sue them for malpractice. As TIG is unable to allege that it has

an attorney-client relationship with defendants, the malpractice claim its asserts against them in Count II is dismissed with prejudice.

## Conclusion

For the reasons stated above, defendants' motion to dismiss is granted as to the malpractice claim asserted against them in Count II, which is dismissed with prejudice, but is in all other respects denied.

**ENTER:**

_____
UNITED STATES DISTRICT JUDGE

DATED: 5/29/01