IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIG INSURANCE COMPANY, individually and as Subrogee of Illinois State University, <br><br> Plaintiff, <br><br> v. <br><br> GIFFIN, WINNING, COHEN & BODEWES, P.C., an Illinois Professional Corporation and Carol Hansen Posegate, <br><br> Defendants. | No. 00 C 2737 |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Giffin, Winning, Cohen & Bodewes, P.C.'s ("Griffin") and Defendant Carol Hansen Posegate's ("Posegate") motion for summary judgment, motion to bar Plaintiff's expert witness, Michael A. Warner, and motion to bar Plaintiff's witness, Mark M. Mester. For the reasons stated below, we grant Defendants' motion for summary judgment and we grant Defendants' motion to bar the testimony of Warner and we grant the motion to bar the testimony of Mester.

1

## BACKGROUND

In September of 1995, a lawsuit, ("Varner action") was filed against Illinois State University and some of its employees and officers (collectively referred to as "ISU"). Griffin was retained by ISU to represent ISU in the Varner action. Posegate is a former member of Griffin. In January 1997, attorney Mark M. Mester ("Mester") of the law firm Latham & Watkins ("Watkins") also entered an appearance on behalf of ISU. At the time of the Varner action, Plaintiff TIG Insurance Company ("TIG") was the liability insurer for ISU. Defendants in the instant action claim that at all times there was an attorney-client relationship between TIG and Watkins.

During the Varner action, the plaintiffs' counsel in the Varner action, Joel J. Bellows ("Bellows"), contacted Dr. William T. Gorrell ("Gorrell"), the former Executive Director for Information Services at ISU. Gorrell had filed his own action against ISU alleging that his employment was unlawfully terminated. Defendants claim that Gorrel agreed to provide Bellows with an affidavit. Defendants also contend that Gorrel informed Bellows of the existence of three Gender Equity Studies prepared by ISU and told Bellows that the studies were kept in a particular database at ISU. According to Defendants, Gorrel provided Bellows with a copy of two of the Gender Equity Studies as well as other related documents. TIG claims that it is unclear as to what exactly Gorrel told Bellows or tendered to Bellows.

On February 5, 1999, the plaintiffs in the Varner action filed a motion for sanctions against ISU. The plaintiffs claimed that ISU intentionally refused to

2

produce or acknowledge the existence of the Planning Policy database, other documents such as the Gender Equity Studies, and certain data in the database maintained by ISU. The motion for sanctions alleged wrongdoing by counsel for ISU and by ISU officials. ISU's counsel who are now Defendants in the instant action, retained counsel in the Varner action in order to defend themselves in regards to the motion for sanctions. Defendants claim that Watkins was defending ISU in regards to the motion for sanctions in the Varner action, although TIG claims that Watkins represented both ISU and Defendants in regards to the motion for sanctions.

On February 24, 1999, Watkins filed a motion to disqualify Bellows for purposes of the motion for sanctions as counsel for the plaintiffs based on Bellows' contact with Dr. Gorrell.

In April and May of 1999, the court in the Varner action held a four-day hearing on the plaintiffs' motion for sanctions. In May of 1999, the court issued its ruling, in which it grouped the *Varner* plaintiffs' allegations into eight categories. The court denied six categories of the plaintiffs' allegations. The court denied the plaintiffs' request to strike the defendants' pleadings or enter an order of default. However, the court sanctioned ISU's counsel that are Defendants in the instant action, to pay the plaintiffs in the Varner action $10,000 and to bear the cost for any deposition that would be required to be retaken as a result of the discovery violations. ISU was not given a monetary sanction. The court in Varner also ordered ISU to respond to any outstanding discovery request.

In May of 2000, TIG filed the present legal malpractice action against

Defendants seeking reimbursement for the attorneys' fees and expenses it incurred in defending against the motion for sanctions in the Varner action. TIG has asserted a right to sue Defendants based on ISU's having subrogated to TIG the rights to sue Defendants.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case."*Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts."*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a

4

genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

Defendants move to bar the testimony of Warner and Mester. In addition, Defendants have moved for summary judgment.

### I. Motion to Bar Testimony of Warner

Defendants seek to bar the testimony of Warner who is TIG's expert witness on the issue of proximate cause, damages, and duty of care. Federal Rule of Evidence 702 ("Rule 702") provides the following:

> For scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The Seventh Circuit has interpreted *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), to require a two step analysis. *Cummins v. Lyle Industries*, 93 F.3d 362, 367-68 (7th Cir. 1996). First of all, the "court must determine whether the expert's testimony is reliable," meaning that the "testimony has been subjected to the scientific method" and is not based upon mere "subjective belief or unsupported speculation." *Id.* Secondly, the court must determine "whether evidence or testimony assists the trier of fact in understanding the evidence or in determining a fact in issue." *Id.*

Defendants argue that Warner's opinions in regards to proximate cause and damages should be held inadmissible under Rule 702. Defendants argue that Warner offered no proximate cause testimony and that Warner, therefore, did not establish the link between Defendants' negligence and any legal fees incurred thereafter. Defendants argue that Warner offered no damages opinion and that Warner's damages testimony is "pure, unsupported argument" and "rank speculation" and would not be helpful to the trier of fact. Defendants characterize Warner's damages testimony as opinions regarding irrelevant issues such as the reasonableness of an amount TIG previously demanded for settlement. Defendants argue that Warner could not isolate the legal fees that Watkins generated in defending the Motion for Sanctions because the bills are not itemized to reflect which motions the specific tasks and expenses relate to. We agree. It is clear from Warner's own admissions that he has simply parroted the information presented to him by the party that hired him and that he has simply coordinated his opinions so that they coincide with the judge's sanctions rulings in the Varner action. During Warner's deposition, Warner

declined to provide an opinion on what the damages are in this action for TIG. Instead, he merely commented on the reasonableness of the settlement demand made by TIG in this case. (Warner dep. 175). Warner explained at his deposition that he understood that TIG had offered to settle the instant action for $650,000 and $50,000 in costs. (Warner dep. 176). Warner acknowledged that his estimations in this action in regards to damages are based upon whether the settlement demand in this action was a reasonable amount. Warner then stated that he concluded that about $90,000 of the $650,000 can be attributed to the motion for disqualification. (Warner dep. 176). Warner also indicated that he used that figure to calculate what he deems is a reasonable allocation of damages to Defendants. (Warner dep. 176).

Warner also admitted that his calculations were merely based upon rough estimates and "discounting" and that the amount sought by TIG is reasonable based upon Warner's general experiences in regards to other motion for sanctions. (Warner dep. 195-96). However, the sanctions motion in the Varner action is fact specific and cannot simply be compared in general with other sanctions motions in other cases with different misconduct at issue. Also, Warner agreed at his deposition that his estimates were a "kind of rough justice." (Warner dep. 196). However, courts do not strive to provide "rough justice." Rather, courts strive to provide actual justice and fairness and in doing so may only allow reliable testimony to be presented to the jury. Warner's estimates and theory of "rough justice" have no place in a court of law. Warner's proposed testimony fails to draw any reasonable nexus between his estimated damages and any misconduct by Defendants. Warner

7

thus also cannot estalish proximate cause for TIG. Therefore, we grant Defendants' motion to bar the testimony of Warner.

We also note that Warner's opinion that he stated at deposition, that he believes Posegate intentionally hid the Gender Equity Studies, should be barred under the equitable doctrine of judicial estoppel. *New Hampshire v. Maine*, 532 U.S. 742, 743 (2001).

II. Motion to Bar Testimony of Mester

Defendants also seek to bar the testimony of Mester. Pursuant to Federal Rule of Evidence 602: "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter" and "[e]vidence to prove personal knowledge may, but need not, consist of the witness' own testimony." Fed. R. Evid. 602. Federal Rule of Evidence 701 provides the following:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

Fed. R. Evid. 701. TIG has not sought to present Mester as an expert witness.

8

Mester purports that he is able to ascertain which hours billed by Watkins can be attributable to the motion for sanctions. However, Mester does not have a sufficient basis to justify his conclusions. We shall provide a more detailed analysis on this issue below in regards to damages. Therefore, we grant Defendants' motion to bar the testimony of Mester.

III. Causation

Defendants argue that TIG cannot establish the "but for" aspect of the causation element for the malpractice claim. TIG argues that ISU suffered damages because it had to defend itself on the motion for sanctions issue and that Defendants are responsible for the need to provide such a defense. However, in the Varner action, ISU was charged with its own discovery violations in addition to any alleged misconduct by Defendants as ISU's counsel. It was the plaintiffs in the Varner action that decided to bring the sanctions motion against ISU and it was ISU's responsibility in the ordinary course of the action to defend itself in regards to the charges against the ISU officials. *See Diamond v. General Telephone Co. of Illinois,* 569 N.E.2d 1263,1272 (Ill. App. Ct. 1991)(finding that the plaintiffs could not establish causation for negligence claim because the plaintiffs "were charged with their own acts of negligence in the underlying cause, and, in reasonable anticipation of liability, they chose to hire their own personal counsel, to settle" the matter). Defendants correctly point out that there is no testimony by Bellows or any other evidence that shows that the motion for sanctions would not have been brought "but

9

for" Defendants' alleged negligence. TIG points to potential testimony by Mester. However, any testimony by Mester concerning Bellows' thought process in filing the motion for sanctions would be nothing more than inadmissible speculation.

TIG makes reference to comments by the judge in the Varner action which TIG contends shows that Defendants could have avoided the sanctions motion. However, the judge in the Varner action made no findings regarding causation of damages to ISU. TIG has not introduced an affidavit by the judge or indicated that the judge will be testifying on that issue in this action. Also, regardless, Mester's testimony would not be admissible because he is not identified as an expert witness.

We also find that TIG has not pointed to sufficient evidence to meet its burden in regards to proximate cause. For instance, there is not sufficient evidence that would show that the alleged damages in this action were foreseeable considering that the motion for sanctions was based upon an alleged inadvertant failure to turn over a few documents. TIG has also not explained how it will establish the standard of care or breach in this action. *See Mayol v. Summers, Watson & Kimpel*, 585 N.E.2d 1176, 1183-84 (Ill. App. Ct. 1992)(indicating that under Illinois law expert testimony is normally required to determine whether an attorney conduct breaches the standard of care that he or she owes a client).

IV. Evidence of Damages

Defendants argue that TIG has not pointed to sufficient evidence of damages that were caused by Defendants. Under Illinois law, as part of a malpractice claim a

10

plaintiff must establish "actual damages." *Washington Group Intern., Inc. v. Bell, Boyd & Lloyd LLC*, 383 F.3d 633, 636 (7th Cir. 2004). *see also Sterling Radio Stations, Inc. v. Weinstine*, 765 N.E.2d 56,60 (Ill. App. Ct. 2002)(stating that for an attorney malpractice claims "[a]ctual damages are not presumed and, thus, the plaintiff must affirmatively plead and prove he suffered injuries resulting from the legal malpractice."). TIG contends that its damages can be proven by "the bills themselves" and the "testimony of Latham & Watkins lawyers who represented ISU, including Mark Mester." (SJ Ans. 2). In regards to the hourly bills of Watkins, Mester admitted at his deposition that he does not have firsthand knowledge regarding the billed hours for the twenty-six other attorneys or the paralegals listed in the bills. (Mester dep. 281-87). Mester acknowledged that he could not state for certain the portion of the billed time that was spent on certain tasks. (Mester dep. 281). Mester also acknowledged that he himself did not record his bills and that he would sometimes include the catchall phrase "further attention to the matter" to cover "everything else that didn't get specifically mentioned." (Mester dep. 204). There is no evidence upon which TIG could estimate the portion of legal fees incurred by ISU that could be attributable to Defendants. Any such estimation would be pure speculation. TIG asserts that to establish damages, "TIG will use[] Mark Mester's testimony [since] [h]e was involved in virtually every aspect of the *Varner* defense just prior to and after the Sanctions Motion was filed." (SJ Ans. 13). TIG further states that Mester "is also the attorney most familiar with the *Varner* case, particularly the defense of the Sanctions Motion, and will be able to testify regarding defendants' negligence and how it precipitated the Sanctions Motion and generally

11

affected the defense of the *Varner* suit." (SJ Ans. 13).

When Mester was questioned during his deposition regarding the damage estimate that TIG had arrived at, Mester stated twice "I can't speak to damages." (Mester dep. 335-36). Mester estimated that ninety percent of Watkins' billed hours should be attributed to Defendants' alleged misconduct, but his conclusion is nothing more than speculation considering his admitted lack of knowledge regarding the billing. For example, Mester admits that the hours reported by the other attorneys and paralegals are correct because of a "strong belief" that such employees are honest and had accurately logged their hours and he admits that he cannot ascertain from the bills all of the particular tasks performed by Watkins' employees. (Mester dep. 282). TIG also makes vague references in its answer to the motion for summary judgment to other possible testimony by additional Watkins attorneys. However, Defendants correctly point out that the time for disclosing such witnesses during discovery has long since passed.

V. Collateral Source Rule

Defendants argue that TIG is not allowed to seek damages under the collateral source rule. Under the collateral source rule, the "benefits received by the injured party from a source independent of, and collateral to, the tortfeasor will not diminish damages otherwise recoverable from the tortfeasor." *Sterling Radio Stations, Inc.*, 765 N.E.2d at 61-64 (explaining that "[t]he rationale behind this rule is that a wrongdoer should not benefit from expenditures made by the injured party, or take advantage of contracts or other relations which exist between the injured party and

third persons."). However, in *Sterling* the Illinois Appellate Court found that "the collateral source rule d[id] not apply in th[at] case" because "[t]he injuries resulting from legal malpractice are not personal injuries, but are pecuniary injuries to intangible property interests." *Id.* The Court in *Sterling* reasoned that "[t]he legal malpractice action places the plaintiff in the same position he or she would have occupied but for the attorney's negligence" and that the plaintiff cannot therefore put himself in a better position "by bringing suit against the attorney than if the underlying action had been successfully prosecuted or defended."*Id.* The Court in *Sterling* concluded that "[t]he legal malpractice plaintiff is entitled to recover only the property interest lost as a result of the alleged malpractice, an amount necessarily limited to the net amount paid by the plaintiff in the underlying action." *Id.*

In the instant action, TIG does not deny that in regards to the alleged damages for malpractice, TIG is reinsured for 50% by a separate entity known as TIG Re and is insured 50% by a reinsurer known as Discover Reinsurance. TIG does not even argue that the ruling in *Sterling* is contrary to Seventh Circuit precedent or not indicative of how the Illinois Supreme Court would rule on the issue. Therefore, TIG is not entitled to the benefit of the collateral source rule in regards to its alleged damages in this action.

## CONCLUSION

Based on the foregoing analysis, we grant Defendants' motion for summary judgment in its entirety.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: April 6, 2005